UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



FILED BY ᴍD

02 NOV 19  PM 4:20

CLARENCE MADDOX
CLERK U S DIST. CT.
S.D. OF FLA - MIA

CASE NO. **02-23350**

**CIV-SEITZ**
**MAGISTRATE**
**BANDSTRA**

UNITED STATES OF AMERICA

    Plaintiff,

vs.

1349 KILOGRAMS OF COMMINGLED
CAVIAR (*Acipenser gueldenstaedtii*,
*Acipenser baerii*, and *A. stellatus*),

    Defendant.

_____/

## COMPLAINT FOR FORFEITURE IN REM

    Plaintiff the United States of America files this complaint in rem against the above named defendant and states:

    1.    This is an action for the forfeiture of the above named defendant, 1391.40 Kilograms of Commingled Caviar (*Acipenser gueldenstaedtii*, *Acipenser baerii* and *A. stellatus* (herein after defendant caviar). Jurisdiction is vested in this Court pursuant to Section 11(c) of the Endangered Species Act of 1973 (the "ESA"), 16 U.S.C. § 1540(c), Section 6 (c) of the Lacey Act Amendments of 1981 (the "Lacey Act"), 16 U.S.C. § 3375 (c), the multilateral Convention on International Trade in Endangered Species of Wild Fauna and Flora (hereinafter "CITES"), signed March 3, 1973, Art. 8 & App. II, 27 U.S.T. 1087, T.I.A.S. No. 8249, 1976 U.N.T.S. 244, as periodically amended by Resolutions of the Conference of the CITES Parties and 28 U.S.C. §§ 1345, 1355 and 1395(b).

    2.    Venue lies in this district pursuant to 28 U.S.C. §1395, in that the defendant caviar is located within the Southern District of Florida and will remain within the district during the pendency of these proceedings.

## STATUTORY AND REGULATORY BACKGROUND

### A. CITES and the ESA

3. CITES was signed by the original Parties thereto, including the United States, on March 3, 1973. It was subsequently ratified by the United States Senate on August 3, 1973, *see* 27 U.S.T. 1087, T.I.A.S. No. 8249, and multilaterally entered into force on July 1, 1975. 993 U.N.T.S. 243. It was enacted into domestic law as part of the ESA. *See* 16 U.S.C. §§ 1531(a)(4)(F), 1532(4), 1537a, 1538(c). Over 140 governments around the world are currently Parties to CITES.

4. The purpose of CITES is, *inter alia*, to foster international cooperation so as to protect certain species of wild fauna and flora against over-exploitation through international trade. CITES Preamble ¶ 4.

5. CITES has three appendices listing various species of wild fauna and flora which are protected under the Convention. Appendix II lists, *inter alia*, those "species which although not necessarily now threatened with extinction may become so unless trade in specimens of such species is subject to strict regulation in order to avoid utilization incompatible with their survival." CITES Art. 2, ¶ 2(a).

6. As of April 1, 1998, all species of sturgeon (Class OSTEICHTHYES, Order *Acipenseriformes*), were listed on Appendix II of CITES, except for two species which are listed on Appendix I. *See, e.g.,* 50 C.F.R. § 23.23(f).

7. The species of sturgeon listed on CITES Appendix II include, but are not limited to, the following: *Huso huso* (beluga sturgeon), *Acipenser gueldenstaedtii* (osetra or Russian sturgeon), *A. stellatus* (star or sevruga sturgeon), and *A. baerii* (Siberian sturgeon). *See, e.g.,* 50 C.F.R. § 23.23(f).

8. Included in the CITES listing of the aforementioned species of sturgeon is, *inter alia*, any body part, product, egg, or offspring of any such species. 50 C.F.R. §§ 10.12, 23.23(d).

9. Sturgeon caviar consists of the roe, or eggs, of various sturgeon species, including the species mentioned in paragraph 7 above. Such caviar is therefore protected fauna under Appendix II of CITES. 50 C.F.R. §§ 10.12, 23.23(d).

10. Under CITES, "the Parties shall not allow trade in specimens of species included in Appendices I, II, and III, except in accordance with the provisions of the present Convention." CITES Art. 2, ¶ 4.

11. Specifically, CITES stipulates that the importation of any specimen of a species listed in Appendix II, including but not limited to sturgeon caviar, requires the prior grant and presentation of a valid CITES export permit or re-export certificate issued by the CITES Management Authority of the country from which the specimen is imported. CITES Art. 4, ¶ 4; 50 C.F.R. § 23.12 (a)(2).

12. CITES further requires that the export permit provide specific information, including but not limited to the scientific name of each species imported, the exact quantity of each species being imported, and the country of origin of every species being imported. CITES Art. 6, ¶ 2; Resolution 10.2, CITES Conference of the Parties, 10th Sess., Arts. 1(a), 9(e), and Annex 1 (June 2-20, 1997); 50 C.F.R. §§ 23.12(a)(2)(i), 23.15(c).

13. CITES also requires the Parties thereto to "take appropriate measures to enforce the provisions of the present Convention and to prohibit trade in specimens in violation thereof," and such measures must include, but not be limited to, measures "to provide for the confiscation" of such specimens. CITES Art. 8, ¶ 1(b).

14. Consistent with the foregoing mandate, the ESA makes it unlawful to engage or attempt to engage in international trade in wildlife specimens contrary to the provisions of CITES. 16 U.S.C. § 1538(c)(1).

15. Moreover, the FWS regulations implementing the ESA and CITES make it unlawful to import, attempt to import, solicit another to import, or cause to be imported from any foreign country into the United States any species listed on CITES Appendix II, including sturgeon caviar, unless the requirements of 50 C.F.R. Part 23 are met. 50 C.F.R. § 23.11(a),(b).

16. Specifically, those Fish and Wildlife Service ("FWS") regulations require that valid CITES documents be issued by the country of export and be obtained prior to importation into the United

States for any specimens of species listed on CITES Appendix II, including sturgeon caviar. 50 C.F.R. §§ 23.12 (a)(2)(i), 23.15(c).

17. Those regulations further provide that, upon the importation of any wildlife listed on Appendix II, including sturgeon caviar, the entities importing such specimens must file with the FWS a completed Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177), signed by the importer or the importer's agent, at the place where FWS clearance is requested. Importers or their agents must furnish all applicable information requested on Form 3-177 and must certify that the information furnished is true and complete to the best of their knowledge. 50 C.F.R. § 14.61.

18. The ESA makes it unlawful to import wildlife listed on Appendix II of CITES, including sturgeon caviar, without filing a true and complete declaration form, as required by 50 C.F.R. § 14.61, so as to facilitate the enforcement of the ESA and CITES. 16 U.S.C. § 1538(e).

19. Moreover, in accordance with CITES Art. 8, ¶ 1(b), the ESA provides that "all fish or wildlife or plants," including sturgeon caviar, which are "taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of [CITES or the ESA], any regulation made pursuant thereto, or any permit or certificate issued [t]hereunder, shall be subject to forfeiture to the United States." 16 U.S.C. § 1540(e)(4)(A); *see also* 50 C.F.R. § 12.22.

    **B.**    <u>**The Lacey Act Amendments of 1981**</u>

20. Sturgeon caviar constitutes "fish and wildlife" within the meaning of the Lacey Act Amendments of 1981 ("Lacey Act Amendments"). 16 U.S.C. § 3371(a).

21. Under the Lacey Act Amendments, it is unlawful for any person to, *inter alia*, import, export, transport, sell, receive, acquire, or purchase any fish or wildlife taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States. 16 U.S.C. § 3372(a)(1).

22. Under the Lacey Act Amendments, it is also unlawful for any person to, *inter alia*, import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or

wildlife which was or has been taken, possessed, transported, or sold in violation of any foreign law. 16 U.S.C. § 3372(a)(2).

23. Under the Lacey Act Amendments, it is further unlawful to attempt to commit any act described in the preceding two paragraphs. 16 U.S.C. § 3372(a)(4).

24. Under the Lacey Act Amendments, it is also unlawful for any person to make or to submit any false record, account, or label for, or any false identification of, any fish or wildlife which has been, or which is intended to be, imported, exported, transported, sold, purchased, or received from any foreign country, or transported in interstate or foreign commerce. 16 U.S.C. § 3372(d).

25. Under the Lacey Act Amendments, all fish or wildlife which is or has been imported, exported, transported, sold, received, acquired, or purchased in violation of 16 U.S.C. § 3372(a) or (d), or any regulation issued pursuant thereto, is subject to forfeiture and condemnation to the United States. 16 U.S.C. § 3374(a)(1).

26. Under the Lacey Act Amendments, it is unlawful for any person to import, export, or transport in interstate commerce any container or package containing any fish or wildlife unless the container or package has previously been plainly marked, labeled or tagged in accordance with regulations issued by the United States Fish and Wildlife Service. 16 U.S.C. § 3372(b).

## STATEMENT OF FACTS

27. *Acipenser gueldenstaedtii* has several common names, including "Oscetra" and "Russian sturgeon." *Acipenser baerii* is known as "Siberian sturgeon" and *Acipenser stellatus* is known as "Stellate sturgeon" or "Sevruga." Throughout this complaint, only the proper Latin names of the relevant species of sturgeon will be used.

28. On December 9, 2001, 1349 kilograms of commingled caviar, declared as *Acipenser gueldenstaedtii,* arrived at the Port of Miami from Russia.

29. On information and belief, the importer of the shipment was Optimus, Inc., located in Miami, Florida.

30. On December 13, 2001, the Fish and Wild Life Service ("FWS") received the entry documents corresponding to the *Acepenser gueldenstaedtii* caviar shipment. According to the Form 3-177 presented to the FWS, Optimus, Inc.'s agent declared that the shipment contained the following: 1349 kgs from Russian Sturgeon (*Acipenser gueldenstaedtii*), 186 kgs from Beluga sturgeon (*Huso huso*) and 595 kgs of caviar from Stellate sturgeon (*Acipenser stellatus*).

31. Optimus, Inc.'s authorized agent signed the Form 3-177 and certified that the information contained therein was true and complete to the best of her knowledge and belief.

32. United States Customs Form 3461 stated that the caviar was in 492 cases. Permit No. 0068/2001, issued by the Russian Federation under the CITES, authorized shipment of 1348.924 kg of *A. gueldenstaedtii* caviar, (799.744 kg in 2 oz jars and 549.18 kg in 4 oz jars). Permit No. 0070/2001 authorized shipment of 186.304 kg of *Huso huso* (Beluga) caviar in 2 oz jars, and Permit No. 0069/2001 authorized the export of 595.531 kg of *Acipenser stellatus* (Sevruga) caviar (282.295 kg in 2 oz jars; 313.236 kg in 4 oz jars). The shipment was conditionally released to Optimus, Inc., pending confirmation of declared species by the FWS forensic laboratory.

33. On December 17, 2001, FWS agents took 30 samples from each of the declared portions of the shipment for a total of 90 samples and sent the samples to the National Fish and Wildlife Forensic Laboratory in Ashland, Oregon ("Forensic Lab"), for scientific testing.

34. On December 19, 2001, Optimus transferred the entire shipment from its own facility to the Customs bonded United States Cold Storage, Inc., facility.

35. On January 23, 2002, results of the scientific testing conducted at the Forensic Lab demonstrated that all 30 samples tested from the alleged Stellate sturgeon caviar and from the Huso huso, were consistent with what was declared. However, of the 30 samples from the alleged *Acipenser gueldenstaedtii*, only 19 were of that species. Contained in the shipment were species other than what was declared; namely, that the shipment which Optimus, Inc. had declared to be "osetra" sturgeon caviar

(*A. gueldenstaedtii*) was intermingled with Siberian sturgeon caviar (*A. baerii*) and a combination of *A. gueldenstaedtii* and *A. baerii sturgeon.*

36.     On January 30, 2002, FWS took 30 additional samples from the alleged *A. gueldenstaedtii* portion of the shipment and sent them to the FWS forensic lab for testing.  On February 8, 2002, results of the forensic testing demonstrated that 21 of the 30 samples could be identified as *A. gueldenstaedtii*, 6 were *A. baerii*, and 3 contained both *A. gueldenstaedtii* and *A. baerii.*

37.     On February 19, 2002, FWS conducted a third round of sample testing on the declared Russian caviar protion (A. gueldenstaedtii) of the caviar shipments.  This time, an additional 180 samples were taken and sent to the FWS forensic lab in three groups of 60 samples.

38.     On March 7, 2002, results of the forensic testing demonstrated that of the 174 determinable samples, only 94 were *A. gueldenstaedtii*, as declared. 42 were *A. baerii* and one was *A. stallatus*, 2 combined both *A. gueldenstaedtii* and *A. stellatus*, and 35 contained both *A. gueldenstaedtii* and *A. baerii.*

39.     On the basis of the scientific test results set forth in the preceding paragraphs, as well as the quantities declared on the CITES documents and the quantities actually imported, FWS cleared those parts of the shipment declared as Stellate sturgeon and Beluga sturgeon caviar because the scientific testing was consistent with what was declared.

40.     However, on March 14, 2002, the FWS formally determined that the declared shipment of Russian caviar, *A. gueldenstaedtii*, consisting of 1,349 kilograms, contained significant mixtures of two other, non-declared species.  Thus, the entire shipment was seized.

### COUNT I
Forfeiture and Condemnation Pursuant to 16 U.S.C. § 1540(e)(4)(a)
Intermingled Species

41.     The United States repeats and re-alleges each and every allegation set forth in paragraphs 1 through 40, above, as if fully set forth herein.

42.     Under the ESA, sturgeon caviar which is "taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the

provisions of [CITES or the ESA], any regulation made pursuant thereto, or any permit or certificate issued [t]hereunder, shall be subject to forfeiture to the United States." 16 U.S.C. § 1540(e)(4)(A); *see also* 50 C.F.R. § 12.22.

43. CITES requires that any export permit pertaining to specimens of a species listed on Appendix II, including sturgeon caviar, provide specific information, including but not limited to the scientific name of each species imported, the exact quantity of each species being imported, and the country of origin of every species being imported. CITES Art. 6, ¶ 2; Resolution 10.2, Conference of the CITES Parties, Arts. 1(a), 9(e), and Annex 1 (June 9-20, 1997); *see also* 50 C.F.R. §§ 23.12(a)(2)(i), 23.15(c).

44. The defendant *in rem* include caviar which was declared to be "osetra" sturgeon caviar (*A. gueldenstaedtii*) but which was in fact other than what Optimus, Inc. had declared it to be, in that it was intermingled with Siberian sturgeon caviar (*A. baerii*) and Stellate sturgeon (*A. stalletus*).

45. Siberian sturgeon (*A. baerii*) and Stellate sturgeon (*A. Stalletus*) are protected species listed on Appendix II of CITES. 50 C.F.R. § 23.23(f).

46. Optimus, Inc. had not declared the presence of Siberian sturgeon caviar (*A. baerii*) or (*A. stalletus*) on its Form 3-177, nor had it obtained a valid permit from the Russian CITES Management Authority to import those species from that country into the United States.

47. The quantities of "osetra" sturgeon caviar (*A. gueldenstaedtii*) were other than the quantities declared on the Russian CITES permits and the Form 3-177.

48. By virtue of the foregoing, the defendants *in rem* were not accompanied by valid CITES documentation.

49. Also by virtue of the foregoing, Optimus, Inc.'s importation and attempted importation of the defendants *in rem* took place contrary to the provisions of CITES and was therefore unlawful under the ESA. 16 U.S.C. § 1538(c)(1); 50 C.F.R. §§ 14.61, 23.11(a),(b), 23.12(a)(2)(i), 23.15(c).

50. The defendants *in rem* were taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, and/or imported contrary to the

provisions of CITES, the ESA, and the regulations made pursuant thereto.

51.   The defendants *in rem* are therefore subject to forfeiture and condemnation in their entirety to the United States. 16 U.S.C. § 1540(e)(4)(A); *see also* 50 C.F.R. § 12.22.

### COUNT II
Forfeiture Pursuant to 16 U.S.C. § 1540(e)(4)(a)
Failure to Declare

52.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 51 above.

53.   The Service has promulgated implementing regulations pursuant to the ESA. 16 U.S.C. § 1538(d)(3). These regulations require any person importing wildlife to the United States to file a wildlife declaration, Form 3-177, to enable inspection and statistical monitoring by the Service. 16 U.S.C. § 1538(e); 50 C.F.R. § 14.61.

54.   The Service's regulations require that an importer furnish all applicable information requested on the Form 3-177 and certify that the information is true and complete. The information required includes the quantity of each species of wildlife, its common name and its country of origin.

55.   The Form 3-177 submitted for this importation indicated that 1,349 kilograms of oscetra *(Acipenser gueldenstaedtii)* caviar from the Russian Federation were imported under Russian export permit No. 0068/2001. The declaration did not declare *Acipenser baerii* or *Acipenser stellatus* of any quantity under that permit.

56.   By importing the caviar without accurately identifying each species in the shipment and the quantity of each species, a true and complete wildlife declaration was not submitted to the Service, and the defendant items were in violation of Section 9(e) of the Endangered Species Act and the implementing regulations. 16 U.S.C. § 1538(e), 50 C.F.R. § 14.61.

57.   As a result of the foregoing, pursuant to 16 U.S.C. § 1540(e)(4)(a), the defendant caviar is subject to forfeiture and condemnation in its entirety to the United States of America.

## COUNT III

Forfeiture Pursuant to 16 U.S.C. § 3374(a)(1)

58.  The United States repeats and re-alleges each and every allegation set forth in paragraphs 1 through 40, above, as if fully set forth herein.

59.  Under the Lacey Act Amendments of 1981, it is unlawful for any person to make or to submit any false record, account, or label for, or any false identification of, any fish or wildlife which has been or which is intended to be, imported, exported, transported, sold, purchased, or received from any foreign country, or transported in interstate or foreign commerce. 16 U.S.C. § 3372(d).

60.  Optimus, Inc. is a "person" within the meaning of the Lacey Act Amendments. 16 U.S.C. §3371(e).

61.  In connection with the defendant caviar, Optimus, Inc. made or submitted to the United States false records, accounts, or labels for, and/or false identification of, fish or wildlife which has been, or which is intended to be, imported, exported, transported, sold purchased, or received from a foreign country, or transported in interstate or foreign commerce.

62.  Said records, accounts, labels and identifications included the CITES permit from the country of origin, the Russian Federation; the shipping documents; the 3-177 form declaring the shipment to the United States Fish and Wildlife Service; the sales invoice; and the shipping crates, all of which were false in that they described the imported caviar as either "oscetra caviar" or "*Acipenser gueldenstaedtii*" and did not identify it as also containing *Acipenser stellatus* or *Acipenser baerii* caviar, which are different species.

63.  Said permit, shipping document, Form 3-177, invoice, and crates were also false in that they identified or declared a false quantity of "oscetra caviar" or "*Acipenser gueldenstaedtii*" because the defendant caviar has *Acipenser baerii* and *Acipenser stellatus* intermingled with the

*Acipenser gueldenstaedtii.* Of the samples taken from the defendant caviar, 42.74% were identified as containing *Acipenser baerii* or *Acipenser stellatus*.

64. The defendant caviar constitutes fish or wildlife which is or has been imported, exported, transported, sold, received, acquired, or purchased in violation of 16 U.S.C. §3372(d).

65. By virtue of the foregoing, the defendant *in rem* is subject to forfeiture and condemnation in its entirety to the United States of America. 16 U.S.C. §3374(a)(1).

## COUNT IV

Forfeiture and Condemnation
Pursuant to 16 U.S.C. §§ 3372(b), 3374(a)(1)

66. The United States repeats and re-alleges each and every allegation set forth in paragraphs 1 through 40, above, as if fully set forth herein.

67. Under the Lacey Act Amendments of 1981, it is unlawful for any person to import, export, or transport in interstate commerce any container or package containing any fish or wildlife unless the container or package has previously been plainly marked, labeled or tagged in accordance with regulations issued by the United States Fish and Wildlife Service. 16 U.S.C. § 3372(b).

68. Optimus, Inc. is a "person" within the meaning of the Lacey Act Amendments of 1981. 16 U.S.C. §3371(e).

69. Regulations issued by the United States Fish and Wildlife Service provide that "no person may import, export, or transport in interstate commerce any container or package containing any fish or wildlife (including shellfish and fishery products) unless he/she marks each container or package conspicuously on the outside with...an accurate and legible list of its contents by species scientific name and the number of each species..." 50 C.F.R. § 14.81.

70. The shipping crates described the imported caviar as "oscetra caviar" and did not identify it, in any quantity, as also containing *Acipenser baerii* or *Acipenser stellatus* caviar, which are different species.

71. Said markings on the shipping crates were inaccurate in that the shipment actually contained a species other than the one identified and the quantity of the identified species "oscetra" (which is not the scientific name) was also inaccurate in that the defendant caviar has *Acipenser baerii* and *Acipenser stellatus* intermingled with the *Acipenser gueldenstaedtii*, as indicated in 42.74% of the samples taken from the defendant caviar.

72. The defendant caviar constitutes fish or wildlife which is or has been imported, exported, or transported in interstate commerce in violation of 16 U.S.C. §3372(b) and 50 C.F.R.§14.81.

73. By virtue of the foregoing, the defendant *in rem* is subject to forfeiture and condemnation in its entirety to the United States. 16 U.S.C. §3374(a)(1).

## COUNT V

Forfeiture and Condemnation
Pursuant to 16 U.S.C. §§ 3372(a), 3374(a)(1)

74. The United States repeats and re-alleges each and every allegation set forth in paragraphs 1 through 73, above, as if fully set forth herein.

75. The defendants *in rem* constitute fish or wildlife which was taken, possessed, imported, exported, transported, sold, received, acquired, and/or purchased (or was attempted to be so affected) in violation of the laws, treaties, and regulations of the United States. 16 U.S.C. § 3372(a)(1), (4).

76. The defendants *in rem* constitute fish or wildlife which was taken, possessed, imported, exported, transported, sold, received, acquired, and/or purchased (or which was attempted to be so affected) in violation of foreign law. 16 U.S.C. § 3372(a)(2), (4). [do we want to raise Russian laws]

77. The defendants *in rem* therefore constitute fish or wildlife which is or has been imported, exported, transported, sold, received, acquired, or purchased in violation of 16 U.S.C. § 3372(a), and/or the regulations issued pursuant thereto.

78. The defendants *in rem* are therefore subject to forfeiture and condemnation in their entirety to the United States. 16 U.S.C. § 3374(a)(1).

**WHEREFORE**, Plaintiff, United States of America requests the Court to declare the defendant caviar condemned and forfeit to the United States of America, and further requests the Court to direct any and all persons having any claim to the caviar to file and serve their verified claims and answers as required by Rule C (6) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Title 18 United States Code, Section 983 (a)(4)(A) and (B), or suffer default thereof, to declare the defendant property condemned and forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981 (a)(1), for disposition according to law; and to grant the United States such other further relief as the Court deems just and proper, together with costs and disbursements of this action.

Respectfully submitted,

MARCOS DANIEL JIMINEZ
UNITED STATES ATTORNEY

By: /s/ Lornette H. Reynolds
LORNETTE A. REYNOLDS
ASSISTANT U.S. ATTORNEY
Fla. Bar No. 035955
99 N.E. 4th Street
Seventh Floor
Miami, Florida 33132
Tel: (305) 961-9294
Fax: (305) 536-7599

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Verified Complaint in rem is true and correct to the best of my knowledge, information and belief.

Date: November _18_, 2002

                                         _[signature]_
                                         SCOTT RICE
                                         Inspector
                                         U.S. Fish and Wildlife Service

| JS 44 | CIVIL COVER SHEET | 02-23350 |
|---|---|---|
| (Rev. 12/96) | Case 1:02-cv-23350-PAS Document 1 Entered on FLSD Docket 11/19/2002 Page 15 of 15 | |

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

UNITED STATES OF AMERICA

CIV-SEITZ

MAGISTRATE
BANDSTRA

**DEFENDANTS**

1349 KILOGRAMS OF COMMINGLED CAVIAR (Acipenser gueldenstaedtii, Acipenser baerii, and A. stellatus),

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** DADE
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

LORNETTE A. REYNOLDS, AUSA
99 NE 4TH STREET, 7th Floor
(305) 961-9294

ATTORNEYS (IF KNOWN)

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 1:02CV23350 Seitz/TEB

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | | B☐ 450 Commerce ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | B☐ 640 R.R & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | B☒ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL UNLESS DIVERSITY.)

16 U.S.C. §1540 et. seq.

**LENGTH OF TRIAL** via 3 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     DEMAND $ _____     CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 11-18-2

SIGNATURE OF ATTORNEY OF RECORD
LORNETTE A. REYNOLDS, AUSA     /s/ Lornette M. Reynolds

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.